HENRY, Adm'r., *v.* MILLS *et als.*

1. ADMINISTRATION. *Plea of fully administered.* Upon bill filed by an administrator to sell lands descended, for the payment of debts, it is not a fatal objection to the claims of creditors by judgment recovered against the administrator, that the defense of fully administered was not made in the suits in which the judgments were rendered, when it is neither claimed by the heirs, nor shown by the proof, that the defense could have been made in the particular cases; and it clearly appears that the personal assets were insufficient to meet the demands in question, and the equally just demands to the satisfaction of which they were applied.

2. *Same. Statute of Limitations. No defense when.* To a bill filed by the administrator against the heir, to sell lands for the payment of debts, the general statute of limitations applicable to real actions, Code, sec. 2763, is no defense.

2. *Same. Same. Is a defense. When.* The recovery of a judgment against the personal representative, by suit commenced in time, will save the bar of the statute of seven years, (Code, secs. 2281, 2786,) as to the realty as well as the personality, provided the proceedings to subject the realty are instituted within seven years from the recovery of such judgment, but not afterwards.

FROM HANCOCK.

Appeal from the Chancery Court at Sneedville.   H. C. SMITH, Ch.

JARVIS & DAVIS for complainant.

KYLE & McDERMOTT for defendants.

COOPER, J., delivered the opinion of the court.

John Mills died in January, 1864, and complainant became the administrator of his estate early in 1866.   On the 8th of March, 1875, he filed the

Henry *v.* Mills.

original bill in this cause against the heirs of his intestate, stating, in the fewest possible words, that the personal assets which came to his hands amounted to $238; that the liabilities of the estate were something over $3,500; that the testator died seized of certain realty mentioned; that the estate is insolvent, and asking that the estate be administered in this court, the land sold, and the proceeds applied *pro rata* to the payment of debts. The heirs demurred; one ground of demurrer being that the creditors should have been made parties. The bill was, thereupon, amended by making certain persons, alleged to be creditors, parties defendant, and specifying the amounts of their respective claims. No explanation is given of these claims, except that it is stated "there were large and heavy suits pending against your orator, as the administrator of John Mills, in the Chancery Court at Rogersville, which have been recently decided," and the decrees in which constitute the larger amount of the indebtedness shown. The heirs again demurred, but the demurrer was overruled. The heirs then answered. They rely, as a defense to the claims of all creditors who have not sued thereon, upon the limitation of two years under the Code, sec. 2279; and, as to the claims reduced to judgment, upon the limitation of seven years under the Code, secs. 2281, 2786. They also insist that by the descent cast, and possession by them of the realty descended for more than seven years, they were protected by the general statute of limitation to actions for the recovery of real property. Code, sec. 2763. They further insist that the

complainant, as administrator, cannot maintain a bill to reach realty descended, for the satisfaction of judgments recovered against him as administrator, without showing that he interposed the defense of fully administered, no assets, or not sufficient assets, and that the defense was found to be true. It was afterwards agreed, as a matter of evidence, that no such defenses were set up in any of the suits in which judgments were recovered. The record shows, by a report of the master, that the personal assets which came to the complainant's hands amounted to $242.50, and that he had disbursed $189; that one judgment remained unpaid which had been recovered against him on the 10th of June, 1867, and another recovered on the 21st of January, 1868; and that the remaining judgments were rendered by a decree of this court, upon a transcript from the Chancery Court at Rogersville, on the 27th of October, 1874, the whole amounting to $6904.15. The Chancellor granted the relief sought, and the heirs have brough the case up by writ of error.

The causes of demurrer, it is conceded, were all obviated by the amended bill except one. That cause was that jurisdiction belonged, in the present instance, exclusively to the County Court, the value of the personal estate not exceeding $1,000. The Code, sec. 2327, does confer on the County Court exclusive jurisdiction of the administration of all insolvent estates, the value of which does not exceed $1,000, and its language was construed to mean the value of the personalty which properly devolved upon the administrator to be administered. *Fleming* v. *Taliaferro*, 4 Heis.,

355. But the act of December 16, 1871, ch. 106, gives the Chancery Court jurisdiction of insolvent estates "where the value of the estate, including both the real and personal property, amounts to $1,000." It may be doubted, moreover, whether the section of the Code relied on applies except when the insolvency of the estate has been formally suggested to the County Court, which does not seem to have been done in this instance, the bill being filed under the Code, sec. 2267, *et seq.*, a re-enactment of the act of 1827, ch. 54.

The only claims allowed by the master in the court below were those reduced to judgments. One objection made to these claims is that the defense of fully administered was not put in by the administrator in the suits in which the judgments were recovered, and that the realty descended cannot be subjected without a finding in favor of the administrator upon such an issue. This is, undoubtedly, the law upon a direct proceeding by the creditor to reach the realty by a *scire facias* upon the judgment recovered against the administrator, for so the statute of 1784, ch. 11, re-enacted in the Code, sec. 2258, *et seq.*, expressly requires. The reason was, that the personal assets must be exhausted, as the primary fund for the payment of the ancestor's debts, before the land could be subjected, and the only mode under that statute of ascertaining the fact was by a direct issue made for the purpose. The same reason, obviously, does not apply to a proceeding under the Code, sec. 2267, in the nature of a suit in equity, which requires an account of the personal assets to be taken before the rendition

of any decree against the realty. It is also important to bear in mind the fact that there is a difference between the rights of creditors, and those of the heir, in the matter of insolvent proceedings by the administrator, as well as in the result of the failure to put in proper pleas in the suit in which judgment is recovered by the administrator.

Thus, for example, if the two creditors, mentioned in the master's report, whose judgments were recovered in 1867 and 1868, were objecting to this bill, the result of which may be to deprive them of any remedy against the administrator personally, it would be difficult, so far as they are concerned, to take this case out of the rulings of this court in *Hamilton* v. *Newman*, 10 Hum., 557; and *Daniel* v. *Lowe*, 7 Heis., 361. The complainant must have known the situation of the estate years ago, and yet offers no excuse for the delay in filing his bill. But it is obvious that the rights of the heirs depend upon other considerations, and the same objection coming from them would not be entertained. So, too, the failure of the administrator to put in the plea of fully administered, would be as against the creditor, in the case of a judgment at law, an admission of assets which could not be disputed upon proceedings by the creditor to hold him personally liable. *White* v. *Archbill*, 2 Sneed, 588. But this rule, even as to the creditor, has been modified by statute, and judicial decision. The Code, sec. 2394, has re-enacted a statutory provision adopted as early as 1838, that "in no case where an estate is ascertained to be insolvent, shall any executor or ad-

ministrator be rendered personally responsible by reason
of any false plea by him pleaded.". Under this pro-
vision, a suggestion of the insolvency of the estate
before the administrator has been held liable will pro-
tect him.    *Mosier* v. *Zimmerman,* 5 Hum., 62; *Griffin*
v. *Fowlkes,* 1 Tenn. Leg. Rep., 30.    So, it was long
before held, he will be protected if he had no oppor-
tunity to plead fully administered, as where the judg-
ment has been taken by motion without notice.    *Wil-*
*liams* v. *Greer,* 4 Hay., 235.    So when the recovery
is by decree in chancery upon pleadings raising no issue
or contest as to whether he had wasted the assets.
*Cox* v, *Cox,* 2 Yer., 305; *Wray* v. *Williams,* 2 Yer.,
302; *Dance* v. *McGregor,* 5 Hum., 435.    And this
would necessarily be the case if the suit had been
commenced in the life time of the intestate, and
merely revived against the administrator.    Of course,
in all such cases, the remedy of the creditor against
the lands descended would not be prejudiced by the
failure of the administrator to plead fully administered.
And *a fortiori,* the remedy of the administrator under
the Code, sec. 2267, or under other provisions of the
Code, upon a formal suggestion of insolvency, would
remain in full force.    The heir, it is well settled,
would be protected by an actual finding against the
administrator upon the plea of fully administered, and
a subsequent *devastavit.*    *Peck* v. *Wheaton,* M. & Y.,
353.    But I am unable to find any case in our
books, nor have the learned counsel for the defend-
ants furnished any, where, since the act of 1827 and
subsequent acts in *pari materia,* and in a proceeding

in the nature of a chancery suit, the heir has been held protected by a mere failure on the part of the administrator to plead fully administered. The reason is, that the only object of the plea is to show that the personal assets have been exhausted before going upon the realty, and this end is attained by the preliminary account of the personal assets required by those acts now embodied in the Code. It is not necessary, however, to lay down a positive rule on this subject. It is sufficient for the present case, that the answer of the heirs does not claim, nor does the proof show, that the judgments in question were recovered under such circumstances as to require the defense to have been put in, and the record does show that the personal assets were insufficient to meet the demands on which the judgments were rendered, and the equally just demands to the satisfaction of which they were applied.

The general statute of limitations, provided by the Code, sec. 2763, for the protection of persons in possession of land under an assurance of title purporting to convey an estate in fee, applies to actions, either at law or in equity, for the recovery of the land itself or some specific interest therein, legal or equitable. It has no application to an action which merely seeks to subject the land to the burden of a debt or charge imposed either by contract or by statute. The limitation could not be set up by a judgment debtor in bar of the enforcement by execution of a judgment more than seven years old, or in bar of a lien or charge in subordination to which possession is taken. *Gudger* v. *Barnes,* 4 Heis., 570; *Norris* v. *Ellis,* 7

Hum., 463. The Code, sec. 2252, embodying the substance of the act of 5 Geo. II, ch. 7, sec. 4, provides that "every debtor's property, except such as may be specially exempt by law, is assets for the satisfaction of all just debts." And although the original act did not authorize the sale of lands descended to the heir by virtue of a judgment against the administrator, nor by virtue of a judgment against the ancestor, except by first exhausting the personal assets by proceedings against the administrator, (*Roberts* v. *Busby*, 3 Hay., 299; *Boyd* v. *Armstrong*, 1 Yer., 40,) yet it virtually made realty assets for the payment of debts, and subsequent acts, notably 1784, ch. 11, Code, sec. 2258, *et seq.*, provided a specific mode for reaching it in the hands of the heir. The mode thus pointed out still remains the only mode in which the creditor can proceed at law, or in the direct enforcement of a money recovery against the administrator in equity. Modern legislation has provided an easier way for the attainment of the same end, commencing with the act of 1827, ch. 54, Code, sec. 2267, *et seq.* The old common law rule of the immunity of lands descended has been effectually abrogated, and the tendency of modern legislation, summarised in the Code, sec. 2252, and of modern decision, is to treat the land of the ancestor, in the hands of the heir, as assets for the payment of debts to the same extent as the personalty. It descends upon the heir charged with the liability in favor of the creditors, to the enforcement of which the latter are justly entitled if they pursue the mode prescribed by law, and have not been guilty of such de-

Henry *v.* Mills.

lay as brings them within the bar of any of the statutes provided for the protection of the heir. The limitation thus provided, upon which the defendants in this case rely, is contained in the Code, secs. 2281–2786. These sections contain the substance of the act of 1715, ch. 48, sec. 9, a statute, to use the language of Judge Reese in *Caplinger* v. *Vaden,* 5 Hum., 629, "about which, several years since, so much was written, and so little decided." And it is a curious fact that, after the elaborate discussions of the earlier cases, it remained for the court, in that case, to put a construction upon the act, which, while not in conflict with any previous adjudication, brought it within the general rules of interpretation applied to all of our other statutes of limitation, and deprived it of the Procrustean character to which its peremptory language seemed to relegate it. The court held that the act, notwithstanding its positive terms, did not begin to run from the death of the debtor, but only from the accrual of the cause of action, if that occurred after the debtor's death. This "equitable construction," as Judge Reese styles it, was embodied in the language of the Code, a fact sometimes overlooked. The original act reads thus: "Creditors of any person deceased shall make their claim within seven years after the death of the debtor, otherwise such creditor shall be forever barred." The Code says: "So that such suit be brought within seven years after the death of the debtor, if the cause of action accrued in his lifetime, or otherwise within seven years from the time the cause of action accrued." The "equitable con-

struction" had been put upon the shorter limitations provided for the protection of the estates of decedents, and was the obvious dictate of good sense. *Marshall* v. *Hudson*, 9 Yer., 57; *Reeves* v. *Pulliam*, 1 Tenn. Leg. Rep., 236. The legislature could never be held to intend, unless they said so in so many words, that a person should be barred of his action before the right to sue had accrued.

The struggle in the earlier cases over the act of 1715 did not turn upon this point, but was whether the act was repealed by 1789, ch. 23; whether it applied to the heir in cases in which his inheritance could only be reached by judgment against the personal representative; and as to what meaning should be given to the words "make his claim." *Pea* v. *Waggoner*, 5 Hay., 1; *Boyd* v. *Armstrong*, 1 Yer., 40; *Johnston* v. *Dew*, 5 Hay., 224. The courts held at once, and the decision has been adhered to, that the heir was entitled to the benefit of the statute where the action was direct for the land descended, as upon a bill filed for the specific performance of a contract of the ancestor for the conveyance of land. *Smith* v. *Hickman*, Cooke, 330; *Lewis* v. *Hickman*, 2 Tenn., 317; *Williams* v. *Conrad*, 11 Hum., 412; *Earles* v. *Earles*, 3 Head, 366. They held also, that the personal representative might have the benefit of the statute after the lapse of seven years from the death of the ancestor, where the cause of action accrued in the lifetime of the decedent. *Lewis* v. *Hickman*, 2 Tenn., 317. And, as we have seen, it was further held that the statute would not begin to run until the

accrual of the cause of action, if it accrued after the death of the debtor, a construction adopted in terms by the Code, and, of course, made applicable to the action against the heir as well as the personal representative. The point left open is as to the right of the heir to rely upon the statute after the cause of action accrued, where no suit could be brought against him at that time, but only after the recovery of judgment against the personal representative.

Upon this point, considering it as entirely open, three views suggest themselves. First, that the heir is protected after the lapse of seven years from the maturity of the debt, regardless of the fact whether, during the time, the creditor could proceed against the heir or not. Secondly, that the running of the statute is prevented by the commencement of an action within the time against the personal representative. Thirdly, that the statute operates in favor of both the personal representative and the heir from the time when the creditor's right to sue commences against each, and inasmuch as the heir, in the case supposed, cannot be sued until recovery is had against the personal representative, the action against him accrues only from that date.

The objection to the first of these views is, that it not only leads to the harsh and inequitable conclusion that a creditor may be barred by the statute, although during the whole time of its running he could not possibly sue the heir, but it runs counter to the decisions of the courts upon all other statutes of limitation, even where the letter of the law is

equally peremptory. The act of 1789, ch. 23 sec. 4, for example, provided that: "The creditors of deceased persons, if they reside within this State, shall within two years, and if without, shall within three years from the qualification of the personal representatives, exhibit to them their accounts, debts, and claims, and make demand, and bring suit for the recovery thereof, or be forever barred in law and equity." But it has been uniformly held that the statute would only run from the time when the right to sue actually accrued, a construction, as we have seen, put also upon the act of 1715 itself. *Marshall* v. *Hudson,* 9 Yer., 57; *Caplinger* v. *Vaden,* 5 Hum., 629. And it has uniformly been held that, although the heir may rely upon the statute of two and three years, and upon the general statutes of limitation, he can only insist upon them up to the time of the bringing of the action against the personal representative. *Peck* v. *Wheaton,* M. & Y., 353; *Neal* v. *McCombs,* 2 Yer., 10. No reason occurs why the same rule of construction should not be applied to the statute of seven years as to other statutes in *pari materia.* For, if the limitation be held to commence in favor of the heir from the death of the ancestor on claims which matured in his lifetime, precisely the same injustice would be worked, though not so frequently as if the heir were permitted to rely upon the general statutes of limitation, or the special limitation of two and three years, although suit might be brought in time against the personal representative. The ordinary law's delay would often extend the litigation with the personal represen-

tative, as in the case before us, beyond the period of limitation, and we should have the unwelcome spectacle of a creditor barred before he had any right to sue.

There is no decision, nor even intimation in our earlier books that the statute would run in favor of the heir in such a case. It was only after the sound of the great struggle over the statute of 1715, to which Judge Reese alludes in *Caplinger* v. *Vaden,* had died away, that such an idea seems to have been entertained. And, even yet, no direct adjudication of the point has been made upon facts which were understood by the court to distinctly raise the question, as was shown by Judge Turney in his review of the cases in *Woolridge* v. *Page,* 2 Leg. Rep., 129. There are, however, two cases in which the learned judges, who deliver the opinions of the court, treat the statute as beginning to run in favor of the heir from the death of the ancestor,' notwithstanding proceedings had against the personal representative. In the first of these cases there had been no formal suit and judgment against the administrator, and only a filing of the claim in the County Court upon a suggestion of the insolvency of the estate. The learned judge who delivers the opinion seems to consider that there was no judgment, and says: "There is no exception in favor of a claim filed under the insolvent acts." *Stone* v. *Sanders,* 1 Head, 248. If, however, the claim was allowed by the County Court, the allowance would have been, in effect, a judgment, and, in that view, the point was raised by the facts, but was clearly not considered by the court. In the other case the suggestion is made

after having already decided the rights of the parties upon the facts disclosed by the record, it not appearing that the suit against the administrator was commenced in time. *Venable* v. *Estell*, 2 Tenn. Leg. Rep., 52. Inasmuch as the Court did not, in either of these cases, consider the rights of the parties upon the basis of a judgment recovered against the personal representative by a suit commenced within due time, the opinions are not binding authority in a case where a formal judgment was recovered in a suit commenced in time, and the rights of the parties, in view of that fact, brought directly under consideration. An opinion, as this court has invariably held, is authority only so far as it adjudges rights upon the particular facts in the record distinctly considered. And we are unwilling to adopt a construction of the statute which would make it bar rights before they could be legally asserted.

It remains to be considered whether the statute begins to run in favor of the heir from the accrual of the creditor's right of action on the debt, and the bar is prevented by the commencement of the suit against the personal representative, or whether the statute begins to run in favor of the heir only from the accrual of the creditor's right of action against him, which would be, in the case before us, from the recovery of judgment against the personal representative. In the first of these views, the creditor's demand is treated as one against the personalty and realty of the ancestor's estate, and the running of the statute is at once put an end to by the commencement of

legal procoeedings against the personal representative within seven years. There can be no doubt that this is the view of the creditor's rights as affected by the ordinary statute of limitations, and the statute of two and three years. If suit be brought against the personal, representative within the bar of these statutes, the heir can no longer rely upon them. In strict analogy, and, perhaps, logically, the statute of seven years would fall within the same principle. I think, too, that this was the view of some of our earlier judges, although the point never was distinctly presented to, or decided by them. In *Pea* v. *Waggoner*, 5 Hay., 5, Judge Roane says: "If the creditor commence his suit in due time, so that the personal representative could not avail himself of the statute of limitations, neither shall the legatee or heir be permitted to avail themselves of it by plea to the *scire facias*, unless perhaps in cases of unreasonable delay." This language is used while discussing the right of the heir to the benefit of the statutes of limitation generally, including the act of 1715. In *Johnston* v. *Dew*, 5 Hay., 240, Judge Haywood says: "The result of these reflections is, that if the personal estate must first be resorted to, and judgment be obtained upon the plea of fully administered, as a foundation for the *scire facias* against the heir before he can proceed against him, a bar to the creditor as against the personal estate must also be a bar as to the real estate." On the other hand, in *Peck* v. *Wheaton*, M. & Y., 353, the right of the heir to rely upon the statute of 1715, although suit had been commenced in time against the

executor, and judgment recovered, after the recovery of such judgment, seems to be conceded. And the objection to the contrary view is that, after judgment in time against the personal representative, there is no statute of limitation in favor of the heir, while the provisions of 1715, brought into the Code, seem to contemplate a period which shall bar all litigation, without respect to disabilities. After judgment recovered against the personal representative, if there be no statute of limitations in favor of the heir, the creditor has acquired a legal right, which cannot now be interfered with within the period of ten years prescription fixed to proceedings on judgments by the Code, sec. 2776. It is not easy to see how laches can be imputed to a creditor for any delay short of the period allowed by law for the assertion of his legal rights. And besides, laches and unreasonable delay are terms of two much uncertainty, and liable to be qualified too much by the circumstances of each case, to give a practical rule for guidance in the large class of cases under consideration. We think it safer to say, that, so far as the heir is concerned, the cause of action cannot be said to accrue in favor of the creditor until he has recovered judgment against the personal representative, wherever his right to proceed against the heir is delayed until such recovery. The language of the Code, which is different, as we have seen, from that of the original act, seems to invite this construction by the general intent disclosed, that the time should only run from the accrual of the cause of action. The heir may still rely upon the

statute if the personal representative neglect to plead it in a proper case, and may also protect the inheritance if the creditor, or the personal representative, who to this extent represents him, neglect to sue for more than seven years after judgment recovered in an action commenced in time. The authorities are that the creditor acquires no lien on the realty until process issued against the heir. *Peck* v. *Wheaton*, M. & Y., 353; *Combs* v. *Young*, 4 Yer., 218. Or, at any rate, until judgment recovered against the personal representative. Per Judge Haywood in *Smith* v. *Stump*, Peck, 281.

The court concurs in the conclusion reached in *Woolridge* v. *Page*, and holds that the recovery of a judgment against the personal representative by suit commenced in time will save the bar of the statute as to realty as well as personalty, provided the proceedings to subject the realty are instituted within seven years from the recovery of such judgment. But the bar of the statute will attach in favor of the heir after the lapse of seven years from the date of the judgment. The result is to modify the decree of the Chancellor by sustaining the exceptions of the heirs to the two judgments recovered in 1867 and 1868, and affirming it in other respects. The costs will be paid out of the proceeds of the realty.

In regard to the rulings of this opinion on the statute of limitations of seven years, all of the judges, except Judge Freeman, who dissents on this point, concur in holding that the heir is not protected by the lapse of seven years from the death of the ancestor, or accrual

Henry v. Mills.

of the cause of action, if the suit is commenced in time against the personal representative. The Chief Justice and the writer of the opinion concur in the other rulings. Judges McFarland and Turney are of opinion that the statute ceases to be operative upon the recovery of judgment against the personal representative in a suit commenced in time. After such recovery, Judge McFarland is of opinion that there is no bar to proceeding thereon by the creditor against the heir short of the ten years limitation of the Code to actions on judgments and decrees, while Judge Turney thinks, as stated by him in *Woolridge* v. *Page*, that the creditor must proceed upon the judgment with reasonable diligence, under the penalty of being repelled for laches, to be determined on the facts of the particular case, but, as between the seven and ten years bar, he prefers the shorter period, and is clear that the creditors whose judgments were recovered more than seven years before the filing of this bill are barred.

FREEMAN, J., delivered a dissenting opinion.

I verbally dissented from the opinion of the majority of the court in the late case of *Woolridge, assignee,* v. *Page*, at Jackson, during last term, in which the question in the main was the same as in the present case. For want of time, I did not prepare a statement of the grounds of that dissent. I now proceed to do so, as well as the objections that occur to me to the present opinion of Judge Cooper.

The question mainly involved is, whether a suit brought against an administrator or personal representa-

11

tive, for a debt of the deceased, within seven years after his appointment, will operate to save the bar of the statute of seven years, given by the act of 1715, Code, sec. —, and our decisions in favor of the heir, when a proceeding is commenced to subject the land of the heir or devisee, to the payment of the ancestor's debt.

This is the main question, and was the sole one decided in the case at Jackson, in an opinion by Judge Turney. The opinion of Judge Cooper in the present case is on the same question, and as I understand it, takes the same ground as held by Judge Turney's opinion, and then adds the additional principle, that the suit must be brought within seven years after the recovery of judgment against the representative; that is, the heir may plead the statute of seven years to the judgment rendered against the representative, and defeat the judgment, if that period has elapsed since its rendition. I cannot agree with the principle announced in either aspect of the question, and proceed to give my reasons for this dissent.

The first proposition as stated by Judge Turney, and equally maintained by Judge Cooper, is as follows: That "the statute means to bar any such claims as are not demanded by suit commenced within the time prescribed after the death of the ancestor, whether brought against the heir or the representative, and that the proper institution of the suit against the administrator or executor in time, will save the bar of the statute as to realty as well as personalty."

I may say before commencing the main argument,

that one leading objection that underlies the whole theory of the opinions is, that they ignore all the distinctions known to our law, as heretofore understood, between personalty and realty, and the broad fact that the administrator or executor represents the personalty alone, while the heir or devisee represents the realty, and that there is no privity between the two, known to our law. This principle, as I think, is one so well settled, that it ought not to be shaken; and while it is recognized, the conclusions of the opinions can never be made consistent with it. The suit against the personal representative can never in anywise affect the representative of realty, whose title or right the administrator or executor neither holds nor represents.

This conclusion is, however, sought in some way to be sustained by virtue of the provisions of the Code, sec. 2252, that "Every debtor's property, except such as may be specially exempt by law, is assets for the satisfaction of all his just debts." I am totally unable to see the slightest bearing this section can have on the statute of limitations in favor of the heir, when his land is sought to be reached. It applies to all property of the deceased, both personal and real—simply declares it shall be assets. In fact, the provision is but an embodiment of what the law had been considered to be before, under the old act of 5th George II. See *Porter's Lessee* v. *Cocke*, Peck's R., 31, 32, Cooper's ed., and cases cited.

But in any aspect you view the section, it does not affect the question before us. Personalty is property, and by the terms of the statute made or recognized

as assets. Yet its appropriation by suit against the representative is controlled by the period of limitation of two and three years. Realty is assets—but, mark you, *real* assets, notwithstanding this provision. Such assets are only assets *sub modo*, and their mode of appropriation specifically fixed by the act of 1784, by *scire facias*, and by an equitable proceeding against the heir under act of 1827, and subsequent acts. Can they be reached in any other way—or by any action against the personal representative? If so, I am not aware of it. The Code having retained these remedies, and it being admitted the realty can only be reached by them, I ask my brethren to explain how it is, that the same Code that has the provision making them assets—having retained the statute of seven years after death of the testator as the *time* in which the suit is to be brought to subject realty—is to be held to have obliterated that period as an independent defense for the heir, and made it dependent upon a suit brought against the personal representative, with whom he has no privity, either in estate or in law? What is there in the language of the section, that can by any mode of construction be held to regulate or affect in the slightest the statute of limitations, or the rights of the heir? What there is to produce this result is beyond my ken to perceive.

But before I proceed with my own views of this question, another objection presents itself to the two opinions. As I understand them, they are irreconcilable the one with the other, and cannot on sound principle stand together. Judge Turney holds, that

suit brought against the personal representative in time, will preclude the heir.     In the first part of the view of Judge Cooper, this is assumed to be correct.     But in the second proposition of Judge Cooper, it is laid down, as I understand it, that notwithstanding the suit brought against the personal representative in time, yet the heir may plead the statute of seven years to the judgment when it has been had against the administrator or the executor, and that the suit to subject the realty must be commenced in seven years after the recovery of the judgment.     This seems to me to be engrafting a new principle on our jurisprudence as to the statute of limitations.

But to proceed.     How can the two views stand together?     If the first principle is correct, that suit commenced in time against the personal representative saves the bar of the statute, I am totally unable to see how the statute can be again brought into activity, and made to bar a judgment recovered in a suit commenced in time to defeat its operation.     I had always understood, that the *commencement* of a suit against the proper person was the time to which you must look to ascertain whether the statute of limitation could be interposed against the claim, and not the time when a judgment was had in that suit.     The principle on which Judge Cooper's opinion must stand is, that the commencement of the suit against the administrator, is only a provisional bar to the effect of the statute; it defeats the heir in case the suit of the creditor is commenced within seven years after judgment had against the admintrator, but does not, if commenced after that

time.    This is, in my judgment, either to interpolate a new principle into our law on this subject, one for which I have never seen any authority, or else it is to abandon and overrule the principles so clearly stated by Judge Turney in the first named case.

It is sought to reconcile the two opinions, by saying, that in the Woolridge case, the facts did not raise the question of the bar in seven years after a judgment, consequently the principle was not laid down in reference to a case like the present, where two of these judgments, as I understand it, were more than seven years old before this proceeding was instituted. This much may be admitted, that the facts did not call for, nor did the court decide in terms or in fact on a case such as the present.    This cannot relieve the conflict nor reconcile the principle as held in the first case, with that laid down in the present one. For the first *must* stand on the principle, announced with such distinctness and emphasis by Judge Turney, that a suit brought against the administrator defeated the bar as to the heir.    It could only be put on that ground, and was so put in the opinion.    If a suit brought—commenced, defeats the bar as to the heir, then inevitably the judgment in the case is saved from the effect of the bar of that statute, or else you have the principle established in this case, that when you sue a party in time to save the bar, and judgment is had, and you afterwards seek to enforce that judgment, the party bound by the former suit,—so far as the time in which it was brought at least was concerned,—may come in and get the benefit of the

Henry v. Mills.

same statute of limitations against the judgment thus obtained.

Now, if my learned brethren will reconcile this conclusion with any admitted principle known to our law, I will feel, at least, that a most serious difficulty is removed to my agreement with them in their views on this question.

Admit as assumed, that the question of a judgment had on suit commenced against the administrator in time, but not sought to be enforced against the heir, was not before the court in the Woolridge case—yet it seems to me certain, that if such a judgment had existed in the case, as well as the one adjudged, as is the case now, the court could never have announced the rule now laid down, without overruling what they so definitely held, and thus making the holding on one branch of the case, antagonize the holding in the other—thus announcing two opposite rules in the same case.

In fact, as I think, the logical, legal, and inevitable result of the principle announced in the Woolridge case, is, that the judgment against the administrator in a suit commenced against him within the seven years, is conclusive for all time against the heir, and no statute of limitations exists in his favor whatever, unless it be one barring judgments from the time of their recovery. We have such a statute, Code, sec. 2276, providing, "that the suit on judgments and decrees of courts of record of this or any other State, shall be brought in ten years after the cause of action accrues," and not within seven, as held in this case.

The case may not be within the letter of the statute as judgment is not against the heir, nor is he a party, but seems to me to be clearly within a liberal construction or application of it; at any rate, it is as clear to my mind, as the idea that the heir, who is not a party, and cannot be, to the suit brought against the administrator, shall be bound by the fact, that said suit was commenced within seven years against such administrator. Judge Turney, I may add, is consistent in his opinion, for he argues, that the heir is protected after judgment, by *laches* of the creditor alone after judgment.

But to return to the main matter. I insist that the two principles announced in the opinions which I am combating, are irreconcilable, and one must inevitably fall. The principle given in the syllabus of Judge Cooper to his opinion, as I understand it, in the first part of it recognizes the one announced by Judge Turney in the Woolridge case, by holding, that a judgment recovered on suit commenced within seven years saves the bar, as against the heir and in favor of the creditor, and then adds, to meet the case of the judgments so recovered, " however, such judgments must be enforced or suit commenced to enforce them within seven years from their rendition, or else the statute will bar them, in favor of the heir;" thus applying a rule, as to judgments on suits properly commenced, to such a case, unknown to our law before.

I see no ground on which the two propositions can stand together, except (as I have said), the one that when a suit is commenced within time to defeat the

effect of the statute, and judgment recovered, because sufficient time had not elapsed at the commencement of the suit, to render the statute effectual, that when you seek to enforce that judgment, the bar of the same statute may be interposed to defeat your judgment. This is to save the bar, by commencement of a suit against the administrator as against the heir—and then to revive the same statute and set it to running against the judgment. For such a rule, I must insist on having either a statute so enacting in plain terms, or a series of well considered cases, so holding. No such statute is known to me—no such cases have been or can be found, as I think. Until the case is so shown, I must be pardoned if I am compelled to differ with my brethren on this aspect of this question. I had always thought, that a *suit properly brought,* within the time prescribed by the statute of limitations, effectually shut the party out from pleading that particular statute, and that the judgment stood precisely as well protected as the suit in which it was recovered. As I understand the holding of the majority of the court in this case, this rule is subject at least to one exception, or will be in the future. I defer to their decision, but cannot assent to the principle here announced—for the present at least.

I now proceed to a discussion of the main question as it is assumed in both opinions, that is, that suit brought within seven years against the heir or personal representative, will save the bar of the statute; or rather that a suit brought within seven years

against the personal representative, will save the bar of the statute against the heir or devisee, the owner and representative of the realty.

This rule is plain and easy to be understood; the only question is, whether it is sound in principle, and sustained by the analogies of our law, or by authority. It admits, by fair implication, and it is well settled, and has been since the case of *Smith* v. *Hickman,* Cook, 330, that the statute does protect the heirs and distributees as well as the personal representative. In other words, that it was intended for and is a right secured by law to the heir for the defense of his estate. With this admission, I proceed to a discussion of the principle announced, which, as I have said, is the same in the first proposition in the opinion of both my brother judges.

The principle on which the rule stands is, that as to the real estate the administrator or executor represents the heir or devisee, and a suit brought against these representatives within seven years precludes the heir or devisee from interposing the statute. In perfect fairness, it is proper to add that this modification or qualification should be given—that, nevertheless, if the judgment so obtained is not sought to be enforced against the heir or devisee within seven years, then the statute will be revived in his favor, and he may plead it to such proceeding. I have attempted to show that these propositions cannot stand together. Is the first one sound and sustainable, is now the question for consideration.

The principle on which the rule stands must be

that of representation or else the conclusion announced could certainly not have been reached. It is thus stated in the opinion by Judge Turney, "That the institution of a suit against the personal representative in time will save the bar of the statute as to the realty as well as the personalty." This must inevitably be the principle of the rule, or else it would follow that a suit commenced against a party who does not represent, is not in privity with him either in law, or by contract or estate, shall bind that third party's estate. I have but to show that the personal representative does not so represent the heir or devisee, and the conclusion of the opinion falls to the ground. The rule laid down, however, must stand on one or the other propositions, either of representation on the part of the executor or administrator, or that the heir or devisee is bound by suit brought against a party who does not represent him or his estate, and that where he is not a party, nor indeed can properly be so. I am indifferent as to which horn of the dilemma is taken, one or the other position is a logical necessity.

As to the first, that of representation, I assume that by the common law no such representation is known. To state the proposition is to refute it. In any form of action known to our law, a personal representative is sued as the representative of the "goods and chattels, rights and credits, of the deceased." He is always thus impleaded, but never as representative of anything but the personalty—in no case of the realty. Judgments have been as uni-

formly rendered against him in accordance with this character as that suits have been brought, the execution given to be levied of the goods and chattels, rights and credits of the deceased in his hands to be administered, or that may come into his hands in a proper case; and this has been the case from time immemorial, and down to the present time. The uniform language of all text writers, and of all decisions of our own courts, is in accord with this principle, and always recognizes the administrator or executor as representing the personalty alone. In accordance with this, if a party dies pending a suit, a revivor is had against the personal representative if it be for personalty, but against the heir or devisee if it be for realty. Further than this, it has long been settled that the personal representative is not responsible for the realty in any way, and if he sells it and gets the proceeds, he and his sureties on his bond are not accountable for such proceeds in his official character. That the bond of an executor only covers the personalty, was settled after most elaborate discussion by Judge Turley in *Hughlett* v. *Hughlett,* 5 Hum., 453, and that even in case of lands devised to be sold by the executor for payment of debts, the same rule applied, and, to use Judge Turley's words, "were not administrable as legal assets; were equitable assets, and only administrable in a chancery proceeding—that neither the oath nor bond of the executor extended to them." If, then, he does not represent the land so as to be responsible for it in any way, where it is by devise appropriated to payment of debts, under

a will where he is executor, much less does he, where it is simply liable under act of 1827, by a proceeding in equity, or under our other statutes making it so liable. In the *emphatic* language of Judge Reese, 5 Hum., 81, the land does not belong to the personal representative either *legally* or *equitably*, in trust or otherwise. *He has* nothing to do with it. Shall all this be *overturned?* This being conceded, as I take will be done, does it not follow that by our law, at least, it is beyond question that the executor or administrator does not represent the realty in any sense known to our general jurisprudence. If this does not prove the proposition no reasoning or authority could do it. Certainly the form of our judgments should be changed if the principle I am combating is sound. I will assume its correctness in all the aspects I have stated.

In support of the view herein maintained, I cite a statement of the law of our State on this question from an authority for which I have the highest respect, my brother Cooper himself. Let it be understood, however, that I do not cite this as an estoppel upon him, nor for the purpose of showing any contradiction between the present opinion and that, but simply because I hold the principles stated to be unanswerably correct, and I wish to draw an argument from them on that assumption. In the case of *Woodfin* v. *Anderson*, 2 Ch. R., 339, the law of Tennessee is thus stated: "But there can be no doubt of the right of the heirs of the intestate, to whom realty has ascended, to contest the validity of claims so far

as they are sought to be charged on the realty, *although they* may have been *validly established against the administrator*, for there is no privity between them and the personal representative. *Garnett* v. *Macon*, 6 Call., 308; *Aston* v. *Munford*, 1 Brock, 266; *Mason* v. *Peters*, 1 Munf., 437. They may make any defense to the claims which he could make, *Sneed* v. *Mayfield's heirs*, Cooke, 60; *Gilman* v. *Tisdale's heirs*, 1 Yer., 288; *Neal* v. *McCombs*, 2 Yer., 10; and they may make other defenses which he could not, *Peck* v. *Wheaton's heirs*, M. & Y., 353." He then goes on to say that where specific debts are recognized by the administrator in the bill, the heirs made defendants who are adults, are bound by it, and cannot dispute the debts, unless they do so by way of answer and cross-bill; that the rule does not apply to infants, they are not bound by the averments of the bill, and they must be proven. The infant defendants, he says, might therefore be able to resist the enforcement of claims against their realty which could not be insisted on either by the administrator or the other heirs. Each heir is entitled to his day in court, and may severally contest the liability of his inheritance for its proportion of the debt. *Roberts* v. *Busby*, 3 Hay., 299; *Williams* v. *Leawell*, 1 Yer., 83; *McCormick* v. *Gibson*, 3 Bland, 508. In this view he held that the claims in contest might be good against the administrator, yet subject to exception on the ground of the statute of limitations by the heir. In this he was strictly correct. I cite at length from the opinion, because it contains a neat summary of the result of our decisions

on the question, and what I hold to be the law of our State, as settled by our own decisions. This court followed the precise principles at last term in the case of *Taylor* v. *Taylor*, opinion written by myself, in which I cite this opinion of Judge Cooper's, and the heir's land was held protected by the statute of seven years, although the claims had been admitted by the administrators. Admitting these principles to be correct, and that first there is no privity between the administrator and the heir, on what known principle of law can it be held that a suit *commenced against* the administrator or personal representative can in any way bind or effect the rights of the heir to his real estate? I confess I am unable to see how this can be done. Second, if the heir is not bound by the result of a suit againt the administrator, that is, by a judgment, or admission of the debt, nor in fact by any act of his, how can he be debarred from pleading the statute of seven years by simply bringing suit against the administrator within seven years? I confess myself hopelessly in the dark as to how this conclusion can be reached by any process of legal logic, and know of no authority that sustains it. In fact, I think the views of my brethren would be appropriate to a system of law in which the heir is made party to the administration, with power to defend suits, or in which the personal representative should be held as his representative. But as that is not our system, the attempt to interpolate the principle on our jurisprudence will introduce hopeless confusion in our law; but worst of all, as I think, is not to decide *what*

*the law is, but what it ought to be,* and thus legislate, or make the law, which is not our function.

To proceed, if this be admitted, that is, the want of representation at · common law, or by our general jurisprudence, then you must find a statute that creates this representative character, or it cannot be found at all. I ask for such a statute, I know of none myself, and none has been cited tending to support the view maintained.. If not existent by the common law, nor found in our statute law, it has no existence in our law at all. Until such basis shall be presented, I am compelled to hold the principle a new one, and for the first time announced as a part of our jurisprudence; and if this be true, am compelled to protest against it, with my conviction, as unwarranted by authority, and not only unsustained, but in contravention of all established principle and . the analogies of our law. The representative character of the administrator, as affirmed in the conclusion of Judge Turney, *must* be maintained, or his conclusion fails, or else he is driven to - the other position, that a party is bound by a suit instituted against another who does not represent him, and with whom he has no privity in law, by contract, or in estate, and that in reference to property which that other can never be sued for or called on to defend. I need only say in reference to the last proposition, that it is too clearly an axiomatic principle to need authority, that no man is bound by either the institution of a suit against another, nor a judgment or decree in such suit, unless he be a · party or in privity in some

way with a party bound, except in cases of proceed ings *in rem,* or in the nature of such proceedings.

In support of the views here maintained, I add, as conclusive of the argument on this aspect of the question, that by our law there is no suit that can be brought against the administrator or executor by which a judgment is sought or can be had against the land of the heir or devisee.   As was formerly held, a judgment for a debt of the deceased against the personal representative was not even *prima facie* evidence of the debt, but in a proceeding against the heir, when contested, had to be proven *de novo,* so that the suit and judgment against the representative went for nothing.    Such is the only logical result of our previous decisions, as well as the common law on this question.    We have, it is true, in the last few years modified this, holding, the judgment may be taken as · *prima facie* evidence of the debt, but not conclusive on the heir or devisee, who may deny its existence and disprove it, notwithstanding the judgment.    This, practically, is not of much importance. It only shifts the burden to the heir to deny and show the objections to the liability.    This being conceded, as it must be, it follows necessarily, it seems to me, that no such suit as may be brought against the personal representative can possibly have any effect whatever on the rights of the heir or devisee.    To do so, it must be held that a party sued for one purpose, that is, to charge the personalty, and who cannot be sued to charge the realty, and failing to plead the statute (admitted to be a protection in some

12

cases at least to the heir or devisee), shall bind the realty by reason of such suit. In other words, that a suit against a party who is not called on, and cannot be, to plead the statute of seven years in defense of the realty, shall, nevertheless, preclude the heir or devisee from using that defense. I will be pardoned when I refuse to adopt a conclusion that stands on such a basis, so subversive, as I see it, of all established principles on the subject, as I have always understood the law. I cannot bring myself to believe the administrator or executor represents the heir or devisee, or the realty, nor that a suit brought against a party can bind another who is not a party, nor represented by him, nor in privity with him. Until I can assent to these propositions I am compelled to dissent from the conclusions of my brethren. When I see these principles to be law, I shall yield my assent to them, but *not till* then. In addition, I am totally unable to conceive how or on what principle the executor or administrator can be held to represent the heir or devisee as to the defense of the statute of limitations, and yet represents him in nothing else, save alone in capacity specially given by a statute, in a particular case, to make deed in pursuance of the title bond of the ancestor, and even then not after seven years. If the theory of my brethren be correct, and he represents the heir or devisee because the land is assets by our law to pay debts under certain circumstances, ought he not to be able to charge or sell that land? Why require a statute to authorize him to convey in pursuance of a title bond? May

not the personal representative sell, and give a good title to all assets which he represents? I have always so understood the law—and that he might even give away these assets and convey a good title at common law.

I see many evils to result from the principle thus announced. A few hard cases may arise where creditors are delayed for over seven years, but they will be very few indeed compared with the number in which the heir's estate will be swept from him by neglect of the creditor, or by collusion with the representative. Up to the case of Woolridge, we had in our books not more than two such cases, as I now remember, to-wit: the case in 1 Head, —, and the case of *Peck* v. *Wheaton's heirs*, M. & Y.—may be another. In both cases, however, the heir received the protection of the statute, and the creditor was repelled by this court. We have, in over eight years on the bench, had but few such cases. In every case where the question had been made, we had given the heir the benefit of the statute, until the Woolridge case—notably in at least four cases, unreported, now within my memory, though other questions were in some of the cases, as in the *Venable* case, still that case was put on that ground clearly, so much so that Judge McFarland dissented for that reason. I cannot assent to overrule all this for an assumed hard case.

Within what time, then, shall the suit be commenced, or rather when does the cause of action accrue, and when does the statute commence to run

under the statutes referred to, and by our decisions? The language of the sections is important here—secs. 2279 and 2784 of the Code—limiting the time when claims shall be presented to the administrator, fix the time of two and three years from the *date of qualification* of the representative, and after accrual of the right of action; that is, after the debt becomes due, and a personal representative is in existence to be sued, as construed by this court. This section applies to suits to be brought against the representative of the personalty alone. But sections 2786 and 2281, giving the seven years' bar, change this language and use the language, "So that suit be brought within seven years *after the death of the debtor*, in one case, and in the other seven years after the death of the debtor, notwithstanding any disability existing, otherwise shall be forever barred. It is true section 2281, giving one year after removal of disabilities, provided the suit be brought within seven years, adds, "if the cause of action accrued in the lifetime of the deceased, otherwise in seven years from the time the cause of action accrued," these last words being added to the statute as it originally stood, by the revisers, to meet the decisions of our court, especially the case of *Caplinger* v. *Vaden*, 5 Hum., 629. I may remark here that the extent of our decisions up to that period was to construe the language of the statute to mean that it did not commence to run until an administrator was appointed, and till the demand became due. These decisions may be considered adopted by the addition of this clause, but the clause cannot be extended be-

Henry *v.* Mills.

yond this, as I think I shall show, without subverting the whole current of view of our courts on this question, as well as doing violence to the language and to the plain general provisions and clearly defined purposes of the Legislature on this as well as the general subject of administration of estates. It ought to be sufficient, on this question, to say that if the revisers had intended that a suit brought against the personal representative should save the bar, this was the appropriate place to have said so, and thus have made their purpose clear. I feel sure that if such purpose had been in their minds it would not have been left open to a construction so doubtful as the one now maintained by my brother judges who differ with me. That seven years was intended to be the time fixed by the original statute after the death of the debtor, is its plain, unmistakable language, and that all claims against the estate were intended to be *extinguished,* not the *remedy* barred, has been the uniform holding of our courts. See 2 Swan, 504; *Stone v. Saunders,* 1 Head, 248, and cases cited; note to T. & S., Code, sec. 2281. That an equitable construction had been given the statute, making the exceptions that an administrator must be appointed, and the demand must have matured against the estate, or be due, had been made is equally certain, and I think it may be conceded that to this extent this construction was adopted by the revisers, and embodied in the language, "or otherwise within seven years from the time the cause of action accrued." But nothing more was intended and nothing more done,

and if more is found in the language, it must be worked out on the idea that "they builded wiser than they thought," or rather contrary to what they thought or said. This is evidenced by the fact that it is clear our statutes contemplate a settlement by the representative of his administration within two years, as a general thing, as shown by the requirement of section 2295, and especially by sections 2311 and 2312, the latter sections forbidding him to hold the estate longer, and giving the distributee or legatee the right to apply to the County, Circuit, or Chancery Court, and compel him, by bill or petition, to pay over his distributive share or legacy, requiring a refunding bond for the security of the creditor, but not the representative. 8 Hum., 374; Code, sec. 2316. This being so, this settlement will always show the exhaustion of the assets, if the fact be so, and the creditor can at once proceed under the act of 1827. Code, sec. —. If assets are in his hands, then he has his remedy against the administrator, and waste of assets against him and the sureties on his bond. In the meantime, if his claim is in suit it makes no difference, he may still have his claim adjudged under this remedy, and needs no judgment; and the administrator may file a bill to enjoin creditors from proceeding at law, the object of the statute of 1827 being to prevent estates being taxed with the costs of a judgment at law, as was required under act of 1784, giving the *sci. fa.* against the heir, and settle all claims in one suit, as held in *Dulles* v. *Read,* 6 Yer., —, soon after the passage of the act, or if the personal assets have not

been exhausted, yet be insufficient, he may file a creditor's bill to reach the personal as well as real assets, have the trust administered in chancery, thus fixing a lien on the realty as against the heir, and giving him a chance to contest the claim and maintain his own rights to his land, and not leave him to the mercy of the creditor and administrator, both interested against him, and have his rights fixed and his land swept away by a suit against a party who does not represent him—a suit of which he may never have heard, and legally can have no notice of. In assuming the settlement to be made in two years, I reason on the assumption that the law is complied with and will not be disregarded, the fair mode of ascertaining what the purpose of the law is. Now if creditors may know the state of the estate in two years, five years from this date, as allowed by the seven years statute, ought to be sufficient for him to proceed against the heir— and it is the creditor's laches, not the heir's, that works the injury—and such is the principle underlying and sustaining the statute of 1715, as applied to the heir. The creditor has ample remedy now. He did not have under act of 1784, when *sci. fa.* had to be based on a judgment against the administrator, yet the law was held in favor of the heir then, much more now should he be protected.

The view I have taken is made almost conclusive by the very next chapter of the Code after the section enacting the seven years statute of limitations. It is entitled, "Disposition of unclaimed assets after seven years." The language in the old act of 1784,

ch. 23, Code, sec. 2282, and is as follows: "After the lapse of seven years from the grant of administration, if any part of the estate remain unclaimed by the kin of deceased or by creditors, it shall be paid by the administrator into the State Treasury, and remain subject to the claims of next of kin and of creditors without limitation of time." Why fix the period at *seven* years, when two and three years had been fixed when suits should be brought against the personal representative debts or demands against him, and he required to settle in two years? Why say the estate thus paid shall be held subject to the demand of next of kin or creditors, without limitation of time? Beyond all question as to the first question, that is, seven years, because it was the period fixed by law for the *extinguishment* absolutely by statutory prescription of all claims or suits against the personal representative or the heir, or devisee, when the estate was to be considered as finally settled, and the administration closed, by the act of 1715, re-enacted in section 2281, the previous section of the Code.

That this was the policy of our law-makers is further shown by the reasoning of our ablest judges in this court whenever the question came up for discussion. To recur to some of our decisions on this subject, and the reasoning of the judges, will serve to put this view in a stronger light than what we have said. In the case of *Lewis, Ex'r*, v. *Hickman's Heirs*, 2 Tenn. R., Coop. ed., 319–20, the question was, whether, under the act of 1794 authorizing executors and administrators to make deeds for lands when the

deceased had given bond for title, it is said, "This act does not limit the time within which the executor or administrator shall exercise the power given." But taken in connection with the two acts, that is, the acts of 1715 and 1789, it seems just to infer the Legislature designed that the representative should make a deed within seven years, and not afterwards. Agreeably to these acts, after seven years the administrator had no power over the estate whereby any act of his could affect the interest of other persons, directly or indirectly, this being the utmost limit for his management or control where the rights of others are concerned, as the heirs, etc. This shows the view taken at that early day of this statute, and accords precisely with what I maintain in this opinion.

We look now to a few of our cases on this question. I admit that in no case was the direct question, now before us, urged before the court—that is, whether a suit brought against the personal representative within seven years would preclude the heir or devisee—yet I may fairly assume that the reason was, that no lawyer or judge of that time ever dreamed of the point as a material one, whether a suit had been brought against him or had not. The idea that such a suit could affect the heir or devisee in any way had not entered their minds, and would never have occurred to them—in fact, never did occur, as abundantly shown by the cases reported. It is for this reason not directly adjudged, because never presented as a ground for decision. This silence of our cases, however, is a most persuasive argument as to

how the law was then understood, and that, too, in cases where, if it had been deemed an element to be considered, the cases might most easily have been disposed of on this ground. We must remember we are construing statutes one hundred and fifty years old, that is, the seven years' limitation. Our business is to arrive at their meaning from their language, not to make or readjust our system to what we may deem the demands of the times in which we live. That duty is for the Legislature, not this court.

To return, the case of *Peck* v. *Wheaton's Heirs,* M. & Y., 352, was such a case. A judgment had been recovered against an administrator on suit commenced within two years after administration. The court nowhere hints at the idea that this suit or the judgment had any influence in affecting the bar of the statute. They do hold that the bar of the statute of three years, act of 1715, ch. 7, sec. 25, could not be used by the heirs if suit was brought within that time against the administrator. Why not lay down the same rule as to the act of seven years? It was an appropriate time to have done so, if such had been their view of the law.

Again, take the case of *Stone* v. *Saunders,* 1 Head, 249. In this case, from the statement made by the Judge, it was a judgment, or its equivalent, by filing the claim and having it allowed in the County Court in an insolvent estate. After this, certain slaves were recovered by the heirs that belonged to the estate, and a bill filed to have them appropriated to the payment of this debt. The court is particular to

give the date of grant of letters of administration—March, 1848; and time of filing the bill—10th of October, 1857. The court holds, in deciding the question of the bar of seven years, that the bar was complete, that it applies to heirs as well as administrators, and these holdings had been constantly adhered to, there being no saving or exceptions in the statute. The court counts the time definitely in the opinion as beginning at the date of the grant of letters of administration, and then adds, there is no exception in favor of a claim filed in insolvent cases, and concludes by saying, that "though the debts may be just, they are lost by the delay and negligence of the creditors, and the defendants have an unincumbered title to them." Whatever else may be said of this case, it is unquestionably a case that settles the rule that the bar of the statute commenced to run from the grant of letters of administration in favor of an heir or devisee. And so I say, where the claim is due. This case must be overturned, or its authority sustains my view on the question now before us. This opinion was the opinion of the court composed of Wright, McKinney and Caruthers, three men who had grown up with and were familiar with our system on this question.

The opinion of Judge McKinney in the case of *The State* v. *Crutcher's Adm'r*, is still more conclusive in favor of this view in its reasoning. He says: "This statute is founded upon just and urgent considerations of public policy. The discouragement of litigation under circumstances which, in many cases, pre-

clude the attainment of truth or justice, the suppression of frauds and perjuries, in attempts to set up demands against the estates of deceased persons, when the means of exposing their falsity have perished—the necessity that those who succeed to the rights and property of such deceased persons should be *quieted* in the enjoyment of their rights; these, and other reasons which might be stated, strongly sustain the policy of the act of 1715. The period (seven years) is sufficiently long for all creditors, in the exercise of reasonable diligence, to assert their rights; and they have no just grounds of complaint that, after the expiration of the time limited, their rights are declared to be *taken away and extinguished;* the loss is the consequence of their own laches." For these reasons the statute was held applicable to the State, and her claim barred, notwithstanding the ordinary statute of limitations did nôt so run against the soverign power.

This was said in 1852; but the same grounds in vindication of the policy of the statute are presented and enforced by Judge White in 1813, in the case of *Smith* v. *Hickman's Heirs,* Cook R., 334, in which he sustains the applicability of the statute to heirs, though not named in it. He insists that it was reasonable the Legislature should think of the heirs, as well as the personal representative, in respect to the debts of their ancestor. "As respects the situation of the heir after the death of the ancestor," he says, "reasons for the limitation also existed. The heir cannot be presumed in all cases to know of the transactions of the ancestor. If no lapse of time can

secure the estate thus descended, the peace of society would be much disturbed. Recoveries might be had of one of many heirs, and suits for contribution take place. If the Legislature deemed it of importance to the peace of society that the time for bringing suits should be limited in case of the proper debts of individuals, for one among many reasons, that vouchers and receipts may be lost or mislaid, there surely is greater reason that the heirs, who cannot be presumed to know the transactions of their ancestor, should be exempt from litigation on that ground, after a certain lapse of time, otherwise they could not know the situation of their affairs. There should be some period when the obligation should cease"—and, we add, *that a definite period.* We might add the views of other judges to the like effect.

This all accords with the view I have taken of this question. Let us for a moment see how it accords with the views of the majority opinion in this case.

On the principle given by Judge Turney, a suit may be commenced two years after the grant of letters of administration, may be supposed to "drag its slow length" through the courts for seven or even ten years, and then the heir be held to answer for the debts ten or twelve years after administration granted; in fact, there is no limit at all to the time when his estate may be subjected, on this view, as the suit commenced against the personal representative saves the bar of the statute in favor of the creditor. Laches, that uncertain criterion, of which the courts can only judge in each particular case, or the time

of presumption of satisfaction by lapse of time, can alone save the heirs' estate from liability. Under the rule of Judge Cooper, practically the result is but little better, as the suit against the administrator may go on for seven years—as we see. in the case of *Woolridge* v. *Page*—and then the heir has no protection for seven years after the judgment, thus making fourteen years before his land is freed from the liability for his ancestor's debts. Is this not, by construction, practically to repeal the statute? and would it not be a fairer conclusion at once to say that the heir should take no benefit from it, rather than to give him an illusion and a snare? Mark you, too, that in the latter case he is subjected to the action of a party with whom he has no privity, and who is interested to make his estate liable to avoid personal liability in his own estate, as in the case now before us, where the administrator was liable for ten years on the judgments, and only escapes it on *scire facias* by this lapse of time—he having failed to plead fully administered, and not having suggested the insolvency of the estate in the County Court, as required by law, and it being too late to do so for his protection now. The same objection lies to the opinion of Judge Turney, the erroneous principles of which we have discussed in the former part of this opinion.

Now look for a moment at the evils attending this view, which is assumed to rest on the principles of common honesty, and which, as I think, rests alone on the idea of pressure in an assumed hard case, as was the Woolridge case, possibly.

Henry *v.* Mills.

The judgment is held *prima facia* against the heir as to the existence of the debt. It would be no better, however, for him if this were not so held, because, by the end of the period fixed for his liability by these opinions, he will, in almost every case, be deprived of all evidence by which to sustain an attack on the validity of the claims. He may be, and in most cases is, a minor, or at any rate part of the heirs are usually such, a suit is being conducted by parties who do not represent him; he has no control over the suit, even if of age—can neither hasten it or make defense to it; he is not a party or served with notice of its pendency—may never hear of it; yet, at the end of fourteen years, he may be called on to yield his estate to the satisfaction of the judgment thus obtained.

Which view—mine or that of my brethren—best accords with sound policy, or is least liable to do injustice? I submit this to every candid thinker on the subject, with perfect confidence as to the result.

The creditor is of age, able to prosecute his rights with diligence. The minor, not aware of his danger, and thus disarmed, is deprived of all chance of making a defense except by accident.

It may be said, such cases will seldom occur as against the heir. I may answer, such cases may frequently occur as against him, by collusion or neglect of the administrator, but are far less likely to occur as against the creditor who has a just claim.

I feel that these authorities and reasonings abundantly justify the opinion I hold in this case, and

that if no such statute existed, it would be much wiser on the part of the Legislature to enact one, than for us, by decision, to overturn it.

I may conclude by saying that the period fixed, of a suit against the administrator binding the heir in the one case, or seven years after the recovery of judgment by the creditor, are both outside of any intimation in the statute, and, as far as I can see, mere arbitrary assumptions of time in order to meet the exigencies of the particular cases. In this view, I see no good reason why seven years after the heir arrived at age if a minor, or any other period, might not have been assumed as well as seven years after a judgment rendered. This would at least have given us a definite period, and not a movable one, depend-ent on the action of the creditor and personal repre-sentative. The principles of common honesty, and hardship to the creditor, are invoked in behalf of the creditor. I reply, is it legally or morally just to the heir or devisee that he shall be bound by the action of parties over whom he has no control, and who are both interested in most cases against him?—certainly the creditor is so interested in almost all cases. Is it no injustice to him that his estate may be swept away by the result of a suit brought against a party who does not represent him, and to which he is not a party, and had no right to become a party, or in any way hasten the action of the cred-itor or shape the defense of the personal representa-tive, and where the representative can never be called on to plead the statute in defense of the realty, be-

cause he can never be sued to reach it by any proceeding known to our law. He and his land may be in a distant part of the State; the suit he and his friends may never hear of, and if they did, as we have said, could take no part in it one way or the other. Is there nothing to be said in favor of the unprotected orphan, as well as in favor of an active creditor, who has ample means of protection to his rights in his own hands, and seven years in which to enforce them? Surely, in the language of Judge McKinney, this is sufficient time within which he may save himself by proper diligence. At any rate, it is the time fixed by the Legislature, and we have no power to change it to meet hard cases. As I see it, the real hardships are all on the side of the heir or devisee. The danger to the creditor is largely fanciful, I think. Our dockets are crowded with cases where heirs have been deprived of their estates by alleged neglect on the part of administrators. We have in eight years had but two—this and the Woolridge case—where the creditor may suffer loss, and I see no evidence in either to clear them from the charge of laches in the prosecution of their claims. By the rule laid down in the two opinions, the statute is practically abrogated as to them, as the heir will never, except by the purest accident, be able to make any defense against the correctness of a judgment had against the representative. Papers and vouchers, if any he had, will be lost, witnesses dead or removed to parts unknown, and so he may be ruined in his estate with no possible means of de-

fending himself. In addition, we may add that the papers and vouchers of the ancestor go into the hands of the personal representative by law, so that the heir or devisee is effectually cut off, except in name, from all defense to any such suit or demand against his estate. The Legislature wisely said seven years should give him security, and I insist on carrying out the plain mandate.

I conclude by saying, that if the law is defective as it stands, let the Legislature apply the remedy, not this court. I concede it is defective, and that, as I have before suggested in a former opinion on this subject, a system ought to be devised by which all estates should be administered in a reasonable time and by the same form of proceeding, to which the heir or devisee should be made a party, with the right of making defense to all claims in person when of age, and by guardian or next friend when a minor, and have a chance to be heard in defense of his estate. We have no such system, however, and have no power to make one—it belongs to another department of government. I think I see clearly that in the effort to add to our present system in order to meet an assumed injustice in the particular case, as usually happens, we are liable to do tenfold more injury than we cure; and I know by experience that hard cases, and efforts to meet them, make hard precedents, and lead to infinite mischief in the administration of the law. I am unwilling to add to the number of evil precedents in this direction.